**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**DAWN HALL,**

                                **Plaintiff,**                    7:12-cv-1733
                                                                              (GLS)

                      v.

**CAROLYN W. COLVIN,**
Acting Commissioner of Social
Security,

                               **Defendant.**
_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR THE PLAINTIFF:** | |
| Legal Aid Society of Northeastern New York, Inc. <br> 17 Hodskin Street <br> P.O. Box 648 <br> Canton, NY 13617 | VICTORIA M. ESPOSITO, ESQ. |
| **FOR THE DEFENDANT:** | |
| HON. RICHARD S. HARTUNIAN <br> United States Attorney <br> 100 South Clinton Street <br> Syracuse, NY 13261 | TOMASINA DIGRIGOLI <br> Special Assistant U.S. Attorney |
| Steven P. Conte <br> Regional Chief Counsel <br> Social Security Administration <br> Office of General Counsel, Region II <br> 26 Federal Plaza, Room 3904 <br> New York, NY 10278 | |

**Gary L. Sharpe**

**Chief Judge**

# MEMORANDUM-DECISION AND ORDER

## I. Introduction

Plaintiff Dawn Hall challenges the Commissioner of Social Security's denial of Supplemental Security Income (SSI), seeking judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3). (Compl., Dkt. No. 1.) After reviewing the administrative record and carefully considering Hall's arguments, the court affirms the Commissioner's decision and dismisses the complaint.

## II. Background

On August 31, 2009, Hall filed an application for SSI under the Social Security Act ("the Act"), alleging disability since July 1, 2009. (Tr.[1] at 65, 115-17.) After her application was denied, (*id.* at 66-69), Hall requested a hearing before an Administrative Law Judge (ALJ), which was held on February 24, 2011, (*id.* at 27-64, 70). On April 7, 2011, the ALJ issued an unfavorable decision denying the requested benefits, which became the Commissioner's final determination upon the Social Security Administration Appeals Council's denial of review. (*Id.* at 1-4, 11-26.)

---

[1] Page references preceded by "Tr." are to the Administrative Transcript. (Dkt. No. 9.)

Hall commenced the present action by filing her complaint on November 26, 2012 wherein she sought review of the Commissioner's determination. (Compl.) The Commissioner filed an answer and a certified copy of the administrative transcript. (Dkt. Nos. 7, 9.) Each party, seeking judgment on the pleadings, filed a brief. (Dkt. Nos. 11, 12.)

### III. Contentions

Hall contends that the Commissioner's decision is tainted by legal error and is not supported by substantial evidence. (Dkt. No. 11 at 22-24.) Specifically, Hall claims that the ALJ erred in: (1) failing to consider her social phobia in making his step two determination; (2) weighing the medical evidence; and (3) evaluating her credibility. (*Id.*) The Commissioner counters that the appropriate legal standards were used by the ALJ and his decision is also supported by substantial evidence. (Dkt. No. 12 at 4-11.)

### IV. Facts

The court adopts the parties' undisputed factual recitations. (Dkt. No. 11 at 1-21; Dkt. No. 12 at 1.)

### V. Standard of Review

The standard for reviewing the Commissioner's final decision under

3

42 U.S.C. § 405(g)[2] is well established and will not be repeated here. For a full discussion of the standard and the five-step process by which the Commissioner evaluates whether a claimant is disabled under the Act, the court refers the parties to its previous decision in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

## VI. Discussion

### A. Severe Impairments

Hall argues that the ALJ erred, at step two of the sequential evaluation, in failing to consider her diagnosis of social phobia. (Dkt. No. 11 at 23.) According to Hall, this omission requires remand, as "it follows that [the ALJ] could not have considered" the effects of Hall's social phobia in determining her residual functional capacity (RFC).[3] (*Id.*) The Commissioner counters, and the court agrees, that the ALJ properly

---

[2] Specific reference to 42 U.S.C. § 1383(c)(3) is unnecessary because judicial review under that section is identical to review under section 405(g).

[3] A claimant's RFC "is the most [she] can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1). In assessing a claimant's RFC, an ALJ must consider "all of the relevant medical and other evidence," including a claimant's subjective complaints of pain. *Id.* § 416.945(a)(3). An ALJ's RFC determination must be supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g). If it is, that determination is conclusive and must be affirmed upon judicial review. *See id.*; *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).

4

determined Hall's severe impairments at step two. (Dkt. No. 12 at 4-7.)

At step two of the sequential analysis, the ALJ must "determine whether the claimant has a severe impairment." *Christiana*, 2008 WL 759076, at *3; *see* 20 C.F.R. § 416.920(a)(4)(ii), (c). A "severe impairment" is "any impairment or combination of impairments which significantly limits [her] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). "The 'mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, itself, sufficient to deem a condition severe." *Bergeron v. Astrue*, No. 09-CV-1219, 2011 WL 6255372, at *3 (N.D.N.Y. Dec. 14, 2011) (quoting *McConnell v. Astrue*, No. 6:03-CV-0521, 2008 WL 833968, at *2 (N.D.N.Y. Mar. 27, 2008)). The omission of an impairment at step two may be deemed harmless error, particularly where the disability analysis continues and the ALJ later considers the impairment in his RFC determination. *See Tryon v. Astrue*, No. 5:10-CV-537, 2012 WL 398952, at *4 (N.D.N.Y. Feb. 7, 2012); *see also Plante v. Astrue*, No. 2:11-CV-77, 2011 WL 6180049, at *4 (D. Vt. Dec. 13, 2011).

Here, in June 2010 licensed psychologist William Kimball diagnosed Hall with major depression, social phobia, and borderline intelligence. (Tr.

at 354.)  In making his step two determination, the ALJ considered Dr. Kimball's report; however, he failed to discuss the diagnosis of social phobia, and only found Hall's depression to be a severe impairment.  (*Id.* at 16.)  Nevertheless, the ALJ continued the sequential evaluation, and, at step three, determined that Hall suffers only mild difficulties in social functioning.  (*Id.* at 17.)  The ALJ specifically discounted Hall's testimony that "she does not like to be around people" based on her treatment notes and the opinion of state agency psychological consultant H. Ferrin.  (*Id.* at 17, 266-79.)  Finally, in making his RFC determination, the ALJ again noted Hall's complaints of social anxiety, as well as her treatment for a variety of mental impairments during the relevant period.  (*Id.* at 18-19.)  Despite these impairments, the ALJ, relying on Hall's consistent Global Assessment of Functioning (GAF) scores,[4] the results of her mental status examinations, and the opinion of Ferrin, determined that Hall could perform simple work.  (*Id.*)  As the disability analysis continued and the ALJ considered claimant's severe and non-severe impairments in making his RFC determination, any error at step two is, at most, harmless.  *See Tryon*,

---

[4] The GAF Scale "ranks psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness."  *Pollard v. Halter*, 377 F.3d 183, 186 n.1 (2d Cir. 2004).

2012 WL 398952, at *4; *see also Plante*, 2011 WL 6180049, at *4.

B. <u>**Weighing the Medical Evidence**</u>

Hall also contends that "the ALJ incorrectly weighed the evidence." (Dkt. No. 11 at 22-23.) Specifically, Hall argues that the ALJ: (1) improperly dismissed the opinions of her primary care provider, physician assistant Ronald Simmons; (2) failed to provide a function-by-function analysis of her physical capabilities; and (3) failed to consider or weigh the opinion of treating licensed master social worker Jonathan Blankenship. (*Id.*) On the other hand, the Commissioner asserts that remand is not warranted in this case, as substantial evidence[5] supports the ALJ's RFC finding. (Dkt. No. 12 at 7-11.) The court again agrees with the Commissioner.

Here, the ALJ determined that Hall retained the RFC to perform light work as defined in the regulations, except that she is limited to simple work. (Tr. at 18.) In making this determination, the ALJ relied on the objective medical evidence, Hall's own reports of decreased pain and psychiatric symptoms, the results of Hall's various physical and mental

---

[5] "Substantial evidence is defined as more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept to support a conclusion." *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) (internal quotation marks and citations omitted).

7

examinations, and the opinions of Drs. R. Paul Ferenchak, Jeanne Shapiro, and psychologist Ferrin. (*Id* at 18-19.) Specifically, in August 2009, x-rays of Hall's lumbar spine revealed moderate degenerative changes, and an October 2009 MRI showed mild to moderate disc bulge, but no disc herniation or stenosis. (*Id.* at 210, 220.) Treating physician John Savage reviewed Hall's MRI and x-rays and noted that, other than "mild degenerative changes, predominantly at L5, S1[, Hall's] spine really looks pretty normal for her age." (*Id.* at 254.) Upon examination by Dr. Savage, Hall exhibited a normal gait and there was no evidence of radicular discomfort. (*Id.*) Hall's muscle strength was normal, sensation intact, and she had good circulation distally. (*Id.*) In December 2009, Dr. Savage's examination results were again benign, and he suggested that Hall take Tylenol for pain relief. (*Id.* at 314.)

In November 2009, Dr. Ferenchak, a consultative examiner, noted that Hall was in no acute distress, could ambulate without discomfort, and exhibited a normal gait and station. (*Id.* at 262-65.) Hall could walk on her heels and toes without difficulty, fully squat, change for the exam, get on and off the exam table, and rise from a chair without difficulty. (*Id.* at 263.) Hall had full range of motion in her thoracic and lumbar spine, and only

8

mild tenderness over the incision from her 2007 back surgery. (*Id.* at 264.) Straight leg raising was positive at forty-five degrees, but she had full range of motion, and 5/5 muscle strength in her lower extremities. (*Id.*) Dr. Ferenchak also found no evidence of muscle atrophy, intact sensation, and physiological and equal reflexes in Hall's lower extremities. (*Id.*) Based on this examination and a review of Hall's x-rays, Dr. Ferenchak opined that Hall's ability to walk, stand, sit, lift, bend, push, and pull was mildly limited. (*Id.*)

The record also contains several assessments completed by physician assistant Simmons in October 2009, and March and April 2010. (*Id.* at 250-51, 329-32.) In his most restrictive opinion, Simmons stated that Hall can walk, sit, and stand for two hours a day. (*Id.* at 329.) According to Simmons, Hall can lift no more than twenty pounds, bend occasionally, and never squat, crawl, or climb. (*Id.*) The ALJ afforded Simmons' opinions "very little weight" because Simmons is not an acceptable medical source, and his opinions are not consistent with Hall's treatment record. (*Id.* at 19.)

Under the regulations, physician assistants are not "acceptable medical sources," but, instead, are considered "other sources" whose

9

opinions *may* be used to show the severity of a claimant's impairment. 20 C.F.R. § 416.913(a), (d)(1). Further, only "acceptable medical sources" can be considered treating sources. SSR 06-03p, 71 Fed. Reg. 45,593, 45,594 (Aug. 9, 2006). Unless controlling weight is given to a treating source's opinion, the ALJ is required to consider the following factors in determining the weight assigned to a medical opinion: whether or not the source examined the claimant; the existence, length and nature of a treatment relationship; the frequency of examination; evidentiary support offered; consistency with the record as a whole; and specialization of the examiner. *See* 20 C.F.R. § 416.927(c).

Here, the ALJ properly considered Simmons' opinions and discounted them due to their inconsistency with the record as a whole. (Tr. at 19.) Not only did Simmons' opinions contradict the findings of Dr. Savage and the opinion of Dr. Ferenchak, in July 2010—one year after Hall's alleged onset date—Simmons noted that Hall was in no acute distress, could get on and off the exam table without difficulty, squat and stoop, and bend on her heels and toes without difficulty. (*Id.* at 254, 264, 299.) Further, in January 2011, Hall reported to treating physician Juan Diego Harris that she was "feeling much better," and was "quite satisfied"

10

with her medication regimen, which she was tolerating well.  (*Id.* at 359.)  In sum, the ALJ provided sufficient reasons for discounting the opinion of Simmons, and his physical RFC determination is supported by substantial evidence.  (*Id.* at 18-19.)

Hall also complains that the ALJ did not provide a function-by-function analysis of her physical capabilities.  (Dkt. No. 11 at 22.)  Although the ALJ could have provided further clarification with respect to Hall's capabilities, as the ALJ's decision examined the relevant factors in reaching an RFC determination, and the ultimate determination was supported by substantial evidence, this shortcoming does not amount to legal error.  (Tr. at 18-19); *see Cichocki v. Astrue*, 729 F.3d 172, 177-78 (2d Cir. 2013); *Irizarry v. Astrue*, No. 5:09-cv-1370, 2012 WL 177969, at *2 (N.D.N.Y. Jan. 23, 2012).

Turning to Hall's mental limitations, throughout the record, treating psychiatrist Michael Camillo consistently noted that Hall presented well with "no flagrantly abnormal mental status findings."  (Tr. at 244-46, 248, 307, 309-13, 373-75.)  According to Dr. Camillo, Hall's symptoms are fairly well controlled with medication, and her major depression is in full remission as of December 2010.  (*Id.* at 311, 373.)  In August and

11

December 2010, Dr. Camillo assigned Hall GAF scores of fifty-five and fifty-eight respectively, indicating that she suffers moderate symptoms or moderate difficulty in social, occupational, or school functioning. (*Id.* at 312, 374); Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed., Text Rev. 2000).

In addition, in November 2009, consulting examiner Jeanne Shapiro found Hall to exhibit adequate social skills, fluent and clear speech, coherent thought processes, and appropriate eye contact. (Tr. at 259-60.) Dr. Shapiro also noted that Hall's attention and concentration and recent and remote memory were intact. (*Id.* at 259.) Hall's insight and judgment were fair, mood was "reflective of physical pain," and affect was congruent with her thoughts and of full range. (*Id.*) Based on this examination, Dr. Shapiro opined that Hall could perform simple and some complex tasks with supervision and independently, maintain attention and concentration, regularly attend and maintain a schedule, learn new tasks, make appropriate decisions, and relate to and interact moderately well with others. (*Id.* at 260.) After reviewing the record, psychological consultant Ferrin adopted the opinion of Dr. Shapiro. (*Id.* at 288.)

Hall contends that remand is required because the ALJ failed to

consider and weigh the opinion of social worker Blankenship. (Dkt. No. 11 at 23.) In February 2011, Blankenship opined that, among other things, Hall had a poor ability to relate to coworkers, deal with work stress, maintain attention and concentration, understand complex instructions, behave in an emotionally stable manner, and demonstrate reliability. (Tr. at 396-98.) According to Blankenship, Hall had no ability to deal with the public, function independently, or complete a normal work-day and work-week. (*Id.* at 369-97.) Hall is correct in noting that, although Blankenship's opinion is not that of an "acceptable medical source," an ALJ should generally "explain the weight given to the opinions from . . . 'other sources,' or otherwise ensure that the discussion of the evidence . . . allows a claimant or subsequent reviewer to follow the adjudicator's reasoning." SSR 06-03p, 71 Fed. Reg. at 45,594, 45,596. Here, however, it is clear that the ALJ considered all of Blankenship's treatment records, which do not support a finding of disability. (Tr. at 19, 62-63, 376, 380, 382-83, 386, 391-93.) Indeed, Blankenship's treatment notes reflect that Hall's medications were working well, she was experiencing fewer feelings of depression and anxiety, and her mental status examinations were normal. (*Id.*) Moreover, while the ALJ is obligated to fully develop the record, he is

13

not required to discuss all of the evidence submitted and a failure to do so does not indicate that the evidence was not considered. *See Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) (citation omitted). Therefore, the court declines to remand on this basis.

## C. Credibility Determination

Finally, Hall claims that the ALJ failed to properly evaluate her credibility. (Dkt. No. 11 at 23-24.) According to Hall, the ALJ failed to provide specific reasons for his credibility finding, preventing meaningful review for subsequent reviewers. (*Id.* at 24.) The court disagrees.

Once the ALJ determines that the claimant suffers from a "medically determinable impairment[] that could reasonably be expected to produce the [symptoms] alleged," he "must evaluate the intensity and persistence of those symptoms considering all of the available evidence; and, to the extent that the claimant's [subjective] contentions are not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry." *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010) (internal quotation marks and citations omitted). In performing this analysis, the ALJ "must consider the entire case record and give specific reasons for the weight given to the [claimant's] statements." SSR 96-7p, 1996 WL

14

374186, at *4 (July 2, 1996). Specifically, in addition to the objective medical evidence, the ALJ must consider the following factors: "1) daily activities; 2) location, duration, frequency and intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness, and side effects of any medications taken; 5) other treatment received; and 6) other measures taken to relieve symptoms." *F.S. v. Astrue*, No. 1:10-CV-444, 2012 WL 514944, at *19 (N.D.N.Y. Feb. 15, 2012) (citing 20 C.F.R. §§ 404.1529(c)(3)(i)-(vi), 416.929(c)(3)(i)-(vi)).

Here, the ALJ concluded that Hall's statements concerning the intensity, persistence, and limiting effects of her symptoms were not fully credible. (Tr. at 19.) In making this determination, the ALJ considered the objective medical records, the opinion evidence, and inconsistencies between Hall's testimony and her reports to treating sources and consultative examiners. (*Id.* at 18-19.) Indeed, while Hall testified that she suffers social anxiety on a daily basis that makes it difficult for her to interact with others, and experiences crying "episodes" four to five times a month, she reported to Dr. Shapiro that, due to treatment, she no longer suffers depression and anxiety symptoms. (*Id.* at 46, 258.) In addition, although Hall testified that her medications do not reduce her pain "at all,"

15

she reported to Dr. Harris, in January 2011, that she was satisfied with her medication regimen and was "feeling much better." (*Id.* at 55-56, 359.)

Although the ALJ did not undertake a step-by-step exposition of the factors articulated in 20 C.F.R. § 416.929(c), "[f]ailure to expressly consider every factor set forth in the regulations is not grounds for remand where the reasons for the ALJ's determination of credibility are sufficiently specific to conclude that he considered the entire evidentiary record." *Judelsohn v. Astrue*, No. 11-CV-388S, 2012 WL 2401587, at *6 (W.D.N.Y. June 25, 2012) (internal quotation marks and citation omitted); *see Oliphant v. Astrue*, No. 11-CV-2431, 2012 WL 3541820, at *22 (E.D.N.Y. Aug. 14, 2012) (stating that the 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) factors are included as "'examples of alternative evidence that may be useful [to the credibility inquiry], and not as a rigid, seven-step prerequisite to the ALJ's finding'" (quoting *Snyder v. Barnhart*, 323 F. Supp. 2d 542, 546 (S.D.N.Y. 2004))). Here, the ALJ explicitly acknowledged consideration of 20 C.F.R. § 416.929, (Tr. at 18), and it is evident from his thorough discussion that his credibility determination was legally sound. *See Britt v. Astrue*, 486 F. App'x 161, 164 (2d Cir. 2012) (finding explicit mention of 20 C.F.R. § 404.1529 and SSR 96-7p as evidence that the ALJ

16

used the proper legal standard in assessing the claimant's credibility).

Additionally, the ALJ's determination that Hall's subjective complaints were not credible to the extent that they suggested impairment greater than the ability to perform light, simple work is supported by substantial evidence. (Tr. at 18.)

### D. Remaining Findings and Conclusions

After careful review of the record, the court affirms the remainder of the ALJ's decision as it is supported by substantial evidence.

## VII. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and Hall's complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

February 3, 2014
Albany, New York

_Gary L. Sharpe_
Gary L. Sharpe
Chief Judge
U.S. District Court